**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HELENA BLAZOVIC, on behalf of herself and all others similarly situated, | |
| Plaintiff, | Case No.: 2:24-cv-6893 |
| v. | **COMPLAINT** |
| KEYSTONE SERVICING COMPANY, LLC, | |
| Defendant. | |

Plaintiff Helena Blazovic, on behalf of herself and all others similarly situated ("Plaintiff"), by and through her undersigned counsel, Denlea & Carton LLP, states for her Complaint against defendant Keystone Servicing Company, LLC ("Keystone"), as follows:

## NATURE OF THE ACTION

1.      This action seeks to redress the unconstitutional windfall that Keystone received when it foreclosed on Plaintiff's house in South River, New Jersey, recovering more than $185,000 based on approximately $3,000 in tax and utility arrears. Keystone's windfall of $180,000, recovered through New Jersey's unconstitutional Tax Sales Law, which cloaked Keystone as a state actor, violates the Fifth and Fourteenth Amendments to the United States Constitution as recognized by the United States Supreme Court in *Tyler v. Hennepin County*, 598 U.S. 631 (2023), and the New Jersey Constitution.

2.      In *Tyler*, the Supreme Court unanimously held that the government's retention of the residual equity from a foreclosure sale without adequate protection for the foreclosed property's owner to recover the residual equity is a taking of private property for public use without just compensation.

1

3.      Acting under color of New Jersey law, Keystone's retention of the residual equity in excess of Plaintiff's unpaid taxes and utility charges violates the United States Constitution's and New Jersey Constitution's prohibition on the taking of private property for public use without just compensation.

4.      While Plaintiff owed money to the local government, such debt does not give license to the government and Keystone to unconstitutionally take the equity she had built up in her house over almost 25 years.  By keeping the residual equity, that is precisely what Keystone did, securing a windfall at the expense of a 78-year-old former resident of South River, New Jersey.

5.      This action seeks to certify a class of New Jersey property owners and those with an ownership interest in property whose property interests and residual equity were taken by and either foreclosed upon or retained by Keystone.

6.      Plaintiff and the proposed Plaintiff Class desire just compensation for the taking of their private property and restitution of excessive fines.  Plaintiff asserts claims for violation of the Takings Clause of the Fifth Amendment to the United States Constitution prohibiting takings without just compensation under 42 U.S.C. § 1983 and the New Jersey Constitution, as well as claims for inverse condemnation, unjust enrichment and money had and received, together with prejudgment interest, costs, and attorneys' fees.

## THE PARTIES

7.      Plaintiff Helena Blazovic is an individual who resides in East Brunswick in Middlesex County, New Jersey.

8.      She was formerly the owner of the home located at 188-190 Whitehead Avenue, South River, New Jersey.

9.     Upon information and belief, defendant Keystone is a Delaware limited liability company, with a principal place of business in Jacksonville, Florida, doing business in the State of New Jersey.

10.    Upon information and belief, Keystone regularly purchases tax sales certificates and the related rights to foreclose on homeowners' properties under the New Jersey Tax Sales Law from municipalities in this State.  After foreclosing on the properties, Keystone retains all amounts recovered in excess of the homeowners' liabilities, resulting in an unjust windfall.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction of this action as the federal claim in this Complaint arises under the Fifth Amendment and Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, as a result, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331.

12.    This Court has supplemental jurisdiction over the legal and equitable claims in this Complaint arising under New Jersey law pursuant to 28 U.S.C § 1367 since those claims arise out of a common nucleus of operative facts with the federal claims that are within the Court's original jurisdiction.

13.    This Court has also subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (1) the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and (2) the named Plaintiff and Keystone are citizens of different states.  28 U.S.C. § 1332(d)(2)(A).

14.    The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds $75,000.

15.     This Court may exercise jurisdiction over Keystone because Keystone has sufficient minimum contacts in New Jersey as it regularly conducts business in the State, including by foreclosing on Plaintiff's home (and the homes of the proposed Plaintiff Class members), thus rendering jurisdiction by this Court proper and necessary.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this judicial district.

## FACTUAL BACKGROUND

**A.      The New Jersey Tax Sale Law**

17.     Under the New Jersey Tax Sale Law, N.J.S.A. 54:5-1 *et seq*. (the "Tax Sale Law"), once a homeowner goes into arrears on her taxes or utility obligations, the local municipality is granted a continuous lien on the property for the unpaid taxes or utilities owed, plus any penalties and costs of collection.

18.     This lien can then be converted to a tax sale certificate and sold on a commercial market to a third party by the local tax collector.

19.     The purchaser of the tax sale certificate is obligated to pay the taxes or other obligations due on the property and may record the certificate as a mortgage on the property.

20.     The tax sale certificate holder can also foreclose on the property and thus acquire title to it.

21.     Before entry of the final foreclosure judgment, the property owner can redeem the certificate by paying the municipality an amount set in accordance with statutory requirements.

22.     If the property is redeemed, the municipality reimburses the tax sale certificate holder the amount it paid for the certificate plus interest.

23.     That is, if the property is redeemed, the certificate holder receives high yield interest returns; if the property is not redeemed, it receives a significant windfall.

24.     As such, the tax sale certificate holder is in a no-lose situation.

25.     The Tax Sale Law is not meant to provide the homeowner with reasonable compensation for her home.

26.     To the contrary, courts have repeatedly recognized the windfall that comes to the foreclosing party.

27.     For example, in *Berley Associates v. Eckert (In re Berley Associates)*, 492 B.R. 433, 440 (Bankr. D.N.J. 2013), the court acknowledged that the party purchasing the tax sale certificate is *not* paying a "reasonably equivalent value" for the property to be foreclosed upon.

28.     Similarly, in *Kopec v. Tower DBW REO VI, LLC (In re Kopec)*, 621 B.R. 621, 625 (Bankr. D.N.J. 2020), the court recognized that for a tax sale certificate, "the bidding is in no way related to the actual value of the property, but rather to the amounts owed in taxes and the interest to be paid thereon."

29.     Because the homeowner loses her entire interest in the property regardless of the amount of arrears, the Tax Sale Law fails to uphold its goal of "protect[ing] property owners from the devastating consequences of foreclosure."  *Simon v. Conekcer*, 915 A.2d 489, 495 (N.J. 2007).

30.     Evaluating the Tax Sale Law pursuant to the Supreme Court's decision in *Tyler*, at least one New Jersey state court has held that the Tax Sale Law violates the Fifth Amendment to the United States Constitution.  *See 257-261 20th Ave. Realty, LLC v. Roberto*, 307 A.3d 19, 354-35, (N.J. App. Div. 2023).

**B.    Plaintiff Owned Her Home Outright for Almost 25 Years**

31.    Plaintiff was formerly the owner of a private, single-family residence located at 188 Whitehead Road, South River, New Jersey (the "House").

32.    She bought the House on or about June 12, 1996 with the intention of retiring in it.  Plaintiff or her family members lived in the House until it was foreclosed upon by Keystone on or about September 16, 2020.

33.    At the time of the foreclosure, neither the House nor the real property on which it sat was encumbered by any sort of mortgage.

34.    That is, Plaintiff owned her House outright.

35.    In 2016, Plaintiff ran into financial troubles, and she was not able to pay the full amount of property taxes and electrical, water and sewer charges she owed.

36.    Such arrears were approximately $2,817.80.

37.    In accordance with Tax Sale Law, Richard Dudas, as Tax Collector of South River, sold a tax sale certificate concerning the House to TFS CUST FOR FIG CAP INJ NJ13 ("TFS CUST") for $3,200.

38.    On or about October 18, 2019, TFS CUST commenced an action in the Superior Court of New Jersey, Chancery Division, Middlesex County, to foreclose on the House.

39.    On August 5, 2020, TFS CUST assigned its interest in Tax Sale Certificate #17-17-00032, dated September 25, 2017, issued by the South River Tax Collector, to Keystone for the price of one dollar.

40.    Subsequently, on August 24, 2020, Keystone substituted as plaintiff in the Foreclosure Action.

41.     On September 16, 2020, the Superior Court of New Jersey, Chancery Division, Middlesex County, entered a Final Judgment in the Foreclosure Action conveying the House from Plaintiff to Keystone.

42.     Subsequently, on March 4, 2022, Keystone conveyed the House to a third party for $185,000 in consideration.

43.     That is, Keystone sold the House for approximately $182,000 more than Plaintiff owed in tax and utility arrears.

44.     Further, upon information and belief, Keystone retained this entire residual equity as a windfall.

45.     Plaintiff was therefore deprived of the value of her House of at least approximately $185,000 because of a scant debt of $2,800.

## CLASS DEFINITION AND ALLEGATIONS

46.     Plaintiff requests that this Court enter an Order certifying this action as a Plaintiff Class Action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1)(A), (B), 23(b)(2), and 23(b)(3).

47.     Plaintiff requests the Court to certify a Plaintiff Class defined as follows:

> All Persons and entities, their heirs and successors, who owned or had an ownership interest in real property that had a tax or utility debt to a local government and that such local government, either directly or indirectly, transferred a tax sale certificate related to such property to Keystone Servicing Company, LLC ("Keystone"), pursuant to the New Jersey Tax Sale Law and that was subsequently: (1) sold within the applicable statute of limitations period (the "Class Period") for more than the amount necessary to satisfy such taxes or unpaid utilities and Keystone offered no opportunity for the taxpayer to recover the residual equity; or (2) retained by Keystone during the Class Period and the value of the retained property exceeds such taxes and associated charges and the local government entity offered no opportunity for the taxpayer to recover the excess value.

48.     Excluded from Plaintiff Class are Keystone and the presiding Judge and court staff assigned to this case.  Plaintiff reserves the right to modify or amend the Plaintiff Class Definition, as appropriate, during the course of this litigation.

49.     Plaintiff further requests that the Court appoint counsel for Plaintiff as Plaintiff Class counsel.

50.     **Numerosity**. This action is appropriately suited for a class action.  The members of the Class are so numerous that joinder of all members of the Class is impracticable.  Plaintiff is informed, believes and thereon alleges, that the proposed Class contains thousands of members who have been damaged by Keystone's conduct as alleged herein.  The precise number of Class members is unknown to Plaintiff.

51.     **Existence and Predominance of Common Questions of Law and Fact**.  This action involves questions of law and fact common to the Class.  The common legal and factual questions include, but are not limited to, the following:

- Whether Keystone's conduct, as alleged herein, constitutes an unconstitutional taking in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

- Whether Keystone's conduct, as alleged herein, constitutes an unconstitutional taking in violation of the New Jersey State Constitution.

- Whether Keystone's conduct, as alleged herein, constitutes an inverse condemnation.

- Whether Keystone has been unjustly enriched by retaining residual equity following the sale of foreclosed-upon properties.

- Whether Keystone's conduct, as alleged herein, is liable for money had and received by retaining residual equity following the sale of foreclosed-upon properties;

52.     **Typicality**. Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members have been injured through the uniform misconduct

described above and suffered the same type of injury, namely, each suffered an injury when Keystone retained the residual equity of the sale of their former properties (or the properties themselves) pursuant to Tax Sale Law.  Moreover, Plaintiff's claims are typical of the Class members' claims. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

53.    **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff had her home foreclosed upon and sold by Keystone, in which proceeding Keystone unconstitutionally retained the residual equity of such sale.  Plaintiff has therefore suffered an injury in fact as a result of Keystone's conduct, as did all Class members.  Plaintiff has retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class.

54.    **Superiority**.  A class action is superior to other methods for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Keystone.  It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her.  Further, even if the Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive

supervision by a single court, and presents no management difficulties under the circumstances here.

55.     Plaintiff seeks monetary damages on behalf of the entire Class.  Unless a Class is certified, Keystone will be allowed to unjustly profit from its unconstitutional practices and retain the residual equity that more properly belong to the members of the Class, while Plaintiff and the members of the proposed Class will have suffered damages.

### First Cause of Action on Behalf of Plaintiff and the Class
**(Violation of the United States Constitution's Fifth and Fourteenth Amendments' Prohibition on Takings without Just Compensation, 42 U.S.C. § 1983)**

56.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 55 as if fully set forth herein.

57.     The Takings Clause of the Fifth Amendment of the United States Constitution provides that "nor shall private property be taken for public use, without just compensation."

58.     The Takings Clause applies to all States of the United States of America through the Fourteenth Amendment, and by extension their subdivisions, instrumentalities, and departments, and those acting on behalf of or through the authority of such State.

59.     The Taking Clause similarly precludes a state law that effects a taking of private property without just compensation.  *See, e.g.*, *Tyler*, 598 U.S. at 638.

60.     Plaintiff and members of the Plaintiff Class had a cognizable property interest in their respective homes and have a cognizable property interest in the residual equity that the Takings Clause of the Fifth Amendment to the United States Constitution protects.

61.     Keystone physically took, and either now possesses or then sold, Plaintiff's and Plaintiff Class members' real property and failed to tender or deliver to Plaintiff and Plaintiff Class members their residual equity or value.

62.     Keystone's retention of the residual equity amounts to a taking of Plaintiff's and Plaintiff Class members' private property for public use without just compensation in violation of their rights under the United States Constitution.  *See Tyler*, 598 U.S. at 639.

63.     Keystone has retained or will retain the residual equity from the auction or sale of real property belonging to Plaintiffs and Plaintiff Class members.  These proceeds assuredly are not and have not been used for a valid public use.

64.     Keystone did not offer to pay just compensation to Plaintiff based on the value of her House compared to the tax and utility arrears before, during or after taking the property of Plaintiff and the Plaintiff Class.

65.     Keystone's failure to pay such compensation has caused Plaintiff and Plaintiff Class members significant damages measured by the windfall Keystone recovered based on the retained value of Plaintiff's and Plaintiff Class members' property, with or without a foreclosure sale.

66.     Plaintiff's and Plaintiff Class members' constitutional right to just compensation based on Keystone's seizure of their property (while it was acting under color of state law) for public purposes is a fundamental right deeply embedded in this country's legal traditions and central to the concept of ordered liberty.  Keystone's conduct has deprived Plaintiff and Plaintiff Class members of that fundamental right.

67.     Keystone constitutes a person and "state actor" under 42 U.S.C. § 1983.

68.     Keystone's actions have caused Plaintiff and Plaintiff Class to suffer material damages pursuant to 42 U.S.C. § 1983.

69.     Keystone is liable to pay Plaintiff and Plaintiff Class members money damages for their injuries suffered, as will be determined at trial.

**Second Cause of Action on Behalf of Plaintiff and the Class**
**(Violation of the New Jersey Constitution's**
**Prohibition on Takings without Just Compensation)**

70.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 69 as if fully set forth herein.

71.     Article I, Paragraph 20, of the New Jersey Constitution provides that "Private property shall not be taken for public use without just compensation. Individuals or private corporations shall not be authorized to take private property for public use without just compensation first made to the owners."

72.     Plaintiff and members of the Plaintiff Class had a cognizable property interest in their respective homes and have a cognizable property interest in the residual equity that the New Jersey Constitution protects.

73.     Keystone physically took, and either now possesses or then sold, Plaintiff's and Plaintiff Class members' real property and failed to tender or deliver to Plaintiff and Plaintiff Class members their residual equity or value.

74.     Keystone's retention of the residual equity amounts to a taking of Plaintiff's and Plaintiff Class members' private property for public use without just compensation in violation of their rights under the New Jersey Constitution.  *See Tyler*, 598 U.S. at 639.

75.     Keystone has retained or will retain the residual equity from the auction or sale of real property belonging to Plaintiffs and Plaintiff Class members.  These proceeds assuredly are not and have not been used for a valid public use.

76.     Keystone did not offer to pay just compensation to Plaintiff based on the value of her House compared to the tax and utility arrears before, during or after taking the property of Plaintiff and the Plaintiff Class.

77.     Keystone's failure to pay such compensation has caused Plaintiff and Plaintiff Class members significant damages measured by the windfall Keystone recovered based on the retained value of Plaintiff's and Plaintiff Class members' property, with or without a foreclosure sale.

78.     Plaintiff's and Plaintiff Class members' constitutional right to just compensation based on Keystone's seizure of their property for public purposes is a fundamental right deeply embedded in this country's legal traditions and central to the concept of ordered liberty. Keystone's conduct has deprived Plaintiff and Plaintiff Class members of that fundamental right.

79.     Keystone's actions have caused Plaintiff and Plaintiff Class to suffer material damages.

80.     Keystone is liable to pay Plaintiff and Plaintiff Class members money damages for their injuries suffered, as will be determined at trial.

### Third Cause of Action on Behalf of Plaintiff and the Class
**(Inverse Condemnation)**

81.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 80 as if fully set forth herein.

82.     Keystone took Plaintiff's and Plaintiff Class members' property in the form of the excess value of their houses above and beyond any tax and/or utility arrears.

83.     Keystone has done so without using any direct condemnation processes.

84.     Keystone has not and will not provide Plaintiff and Plaintiff Class members any opportunity to claim the excess equity in their properties after the seizure and/or later sale of their respective property, nor does Keystone provide or have a process for Plaintiff and Plaintiff Class members to claim compensation at the time Keystone sold their properties and kept the excess.

85.     Keystone has not paid just compensation.

86.     An inverse condemnation with damages has occurred.

87.     Plaintiff and Plaintiff Class members have been injured and have suffered damages.

88.     Keystone is liable to pay Plaintiff and Plaintiff Class members money damages for their injuries suffered, as will be determined at trial.

### Fourth Cause of Action on Behalf of Plaintiff and the Class
**(Unjust Enrichment)**

89.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 88 as if fully set forth herein.

90.     Keystone has been enriched at Plaintiff's and Plaintiff Class's expense.

91.     It is against equity and good conscience to permit Keystone to retain the residual equity from the foreclosure sale of Plaintiff's and Plaintiff Class Members' properties (or to simply retain such properties without compensation).

92.     As such, Keystone has received money or value to which it is not entitled.

93.     Keystone was enriched when it retained the residual equity from the foreclosure sales or simply retained the properties even in the absence of a sale.

94.     Keystone is not entitled to the residual equity because Plaintiff and Plaintiff Class are "entitled to the surplus in excess of the debt owed" based on any tax or utility arrears. *Tyler*, 598 U.S. at 642.

95.     By having the surplus values of their properties retained without just compensation, Plaintiff and Plaintiff Class have made a greater contribution to the general welfare than they are required.  It is therefore against equity and good conscience to permit Keystone to retain the residual equity.

96.    For the foregoing reasons, Plaintiffs and Plaintiff Class are owed restitution in the amount of the residual equity collected by Keystone.

### Fifth Cause of Action on Behalf of Plaintiff and the Class
**(Money Had and Received)**

97.    Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 96 as if fully set forth herein.

98.    Keystone received money belonging to Plaintiff and Plaintiff Class when it collected the surplus proceeds because Plaintiffs and Plaintiff Class are "entitled to the surplus in excess of the debt owed" as set forth above.  *Tyler*, 598 U.S. at 642.

99.    Keystone benefitted from receipt of such money.

100.    Under principles of equity and good conscience, Keystone should not be permitted to keep the money.

101.    It is therefore against equity and good conscience to permit Keystone to retain the residual equity beyond that which was owed by Plaintiff and Plaintiff Class based on their tax or utility arrears.

102.    For the foregoing reasons, Plaintiff and Plaintiff Class are owed restitution in the amount of the residual equity collected by Keystone as will be determined at trial.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Keystone as follows:

A.    Certifying this action as a class action as soon as practicable, with the Class as defined above, designating Plaintiff as the named Class representative, and designating the undersigned as Class Counsel.

B.      On Plaintiff's Causes of Action, awarding against Keystone the damages that Plaintiff and the other members of the Class have suffered as a result of Keystone's unconstitutional retaining of the surplus of the values of Plaintiff's and Plaintiff Classes' houses following the foreclosures, the amount of such damages to be determined at trial, together with interest and reasonable attorneys' fees, costs, and expenses.

C.      On Plaintiff's Causes of Action for inverse condemnation, unjust enrichment and money had and received awarding against Keystone restitution in the amount retained by Keystone beyond the arrears owed by Plaintiff and the other members of the Class on their respective houses.

D.      Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

<u>**DEMAND FOR TRIAL BY JURY**</u>

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: June 10, 2024
         White Plains, New York

                                        **DENLEA & CARTON LLP**

                              By: _____
                                        Craig M. Cepler
                                        Steven R. Schoenfeld
                                        2 Westchester Park Drive, Suite 410
                                        White Plains, New York 10604
                                        Tel.: (914) 331-0100
                                        Fax: (914) 331-0105
                                        ccepler@denleacarton.com
                                        sschoenfeld@denleacarton.com
                                        *Attorneys for Plaintiff*

16